Good morning, Your Honors, and may it please the Court, Andrew Jacobs and Danny Green for Leonardo Tapia-Felix. The Government bore the burden, a heavy burden, of clear and convincing proof in this case, and the Government has essentially no affirmative case left, given that its primary witness was not relied upon by the District Court below. This Court was clear in the important Mundaka Vega case, which tells us a lot about this issue, that the Government has to fulfill this burden by clear and convincing, and this Court should reverse where there is a definite and firm conviction that a mistake has been committed. Well, the District Court cited primarily to the Mexican birth certificate as evidence in favor of the Government, and that demonstrates the place of birth as being in Mexico. That's the only evidence that the Government relied upon, and importantly, when the Department of State revoked Leonardo's citizenship in 2012, it was relying on the affidavit that this District Court properly determined it could not possibly rely upon. And there are other cases that indicate that it isn't good enough when you need to prove something by clear and convincing to simply seek to discredit or question the credibility of certain opposing proofs. Gonzales-Gomez v. INS, where credibility is suspect, this does not aid the Government. The other witness need not prove the Government's case as well. The Supreme Court case Mitsugi Nishikawa, nor can the District Judge's disbelief of petitioner's story fill in evidentiary gaps. Literally all they have is the Mexican birth certificate. We have a witness to the live birth, and under this circuit's law in Brennan, which they don't even cite, they basically grant that by silence. Under Brennan, where testimony is clear, positive, and unimpeached affirmative testimony, that testimony is conclusive. And it's just amazing in this record that Agent Wakefield, ER-149, said he never meant to interview the witness to the live birth, Avelina Tapia. She was an un-person in this record. Was there an identification card that listed his, indicated he was Mexican? The Mexican Government, after the registration, did then issue a registration card. Yes, Your Honor. But what happened here was that you had a situation where there was positive, unimpeached, unquestioned testimony. The Government never interviewed these people. The Government didn't want to depose these people. We put them on the stand, and they said, born in Santa Ana, California, they decided not even to cross-examine these people. It is circuit law that when there's positive testimony that's unimpeached, that that testimony counts and is to be given credit. The difficulty with that argument is that the district court made adverse credibility findings. Didn't the district judge do that? Well, but that's precisely, Judge Nguyen, what Brennan is about. It's about the arbitrariness of deciding that when somebody gives you positive, unimpeached testimony, that that testimony should stick if there's literally nothing laid up against it. And so here, you know, basically the idea, I guess, is that they get summary judgment based on the Mexican birth certificate, which would obviate the need to have a trial about anything. And it would basically give the district court sort of no reason to look at all the different, many pieces of evidence, all of which went cleanly the other way. By not even cross-examining Avelina Tapia, they basically treat the Tapias like non-people. They came here to testify. The Government made that hard, made them travel 400 miles, never interviewed them, gave them no dignity in this case. You know, the Government wants to rely on these records, but in the records it indicates Avelina Tapia is a witness to the birth. She shows up and says she is, and they don't even care. And the district court just says, well, it was kind of brief. Well, yeah, it was really brief because the trial was going to end at 5 o'clock, and we didn't get till 445 because the witness that they put up that took up three hours, the district court didn't even rely on, took up half the day. So it really is unfair to say, well, it's not that credible because they were up and down quickly when we got to them at 445 because the Government took up more than half the day. That's kind of a very casual jibe at credibility. It wasn't like they said anything internally contradictory, and that is Brennan. There's nothing in their testimony that's implausible whatsoever. A quarter of a million Mexican families out of 550,000, according to the Mexican Government, the judge let that in at ER 205. That's admitted. That's the predicate to the expert's testimony. Almost half of these Mexican families with children born in America do the dual-registration thing. It may seem distasteful. The judge kind of called it out as fraud or something in his remarks during the colloquy. We understand that. It's also admitted testimony. The Government didn't have an expert. They didn't rebut it. All they basically have is saying, but you can't look into the heart of these people and know their motives 40 years ago. That completely ignores the testimony. You also made the point in your brief about the judge rejecting the stipulation of fact. But as I heard it, the stipulation of fact, by the way, when did the judge do that? Was it after the case? When we got the order. When we got the order in March, after the trial. So what's the effect of that? How is that harmful? Because the stipulation of fact was that Mr. Tapia Felix was baptized in December 1972 in Los Angeles. But as I understand, your position is he was born in June 1972. So what does it tell us that, well, maybe the judge should have considered a stipulation that he was baptized six months after he was born? Because, Judge Simon, it's kind of an unconvincing logic game after the trial to say, but I don't really like the documents that seem to evidence the baptism. The U.S. government over here agreed he was baptized. Courts commonly rely on family testimony and evidence of baptism as corroborating the suggestion of birth. In California issued, it's delayed registration of birth partly because of the baptism. But doesn't it occur? Does it matter that the baptism, under your theory, took place six months after the birth? It's not discrediting. It means he was living in California in a time reasonably close to the birth, which again, district courts, we quote the Gastelum case Judge Gee wrote in 2016. Courts commonly rely on this because it's hard to look back 40 years. Courts need anchors to hold on to in the district court. And they say, hey, baptism, family testimony, that counts. And again, we have a baptism and we have a family they're ignoring. And Brennan says you can't do that. And that's not fair to this case. So we think that in this case there's almost no evidence left. If you imagine their affirmative case, they bearing the clear and convincing burden. Imagine it without Agent Wakefield. Imagine all the blank pages in their closing brief. There's almost nothing left. And the district court basically said, okay, we've eradicated Agent Wakefield. I refuse to rely on him. I refuse to rely on the affidavit that kept your client in immigration jail for three years. I refuse to rely on all of that. But I've got a revoked Mexican birth certificate so it doesn't matter that the lady from Mexico City who's an expert in this, who's a MacArthur fellow, shows up and says half the families in this circumstance do this registration. It tends to make it more likely. I don't have to prove he was born in America. They have to prove he was born in Mexico. Who represented him in the district court proceeding? Your Honor, I was with my associate, Courtney Henson. She did most of the work. I did a little bit of examination. So in the district court proceeding, we had all this evidence pointing this one way. And again, under Brennan, uncontradicted positive testimonies. And you argued this to the district court? I'm sorry, argued which district court? This was argued to the district court. We extensively argued that. During the court, the court, the government was permitted to vordeer this witness for 20 minutes before we got her testimony in at ER 205. And the government was saying, but you can't know the motives. You don't know why it was registered. And that misconstrued mischievously what the witness was for. She was there to show the statistical prevalence and commonality of the practice and how it tends to make the important fact more likely true than it was before she testified, which is the birth in America. And again, we don't have the burden. They have the burden. The judge let that in. That's in the record. And they didn't have an expert. They lay nothing against it. Just like Avelina Tapia, they lay nothing against her as well. If I could please reserve two minutes? Certainly. Thank you, Your Honor. May it please the Court, good morning. Attorney Sabatino F. Leo on behalf of the United States Attorney General. There's a couple of issues in this case, and I want to discuss them with you and have you respond to whether if, in fact, these were errors in the court's analysis, whether it's sufficient to remand. One is the court's rejection of a factual stipulation, not legal. This is a stipulation of fact by the parties, which normally would bind the court. And not only did the court reject that factual stipulation, it never gave the parties any signal that it was going to do so. And so, therefore, it deprived the Petitioner's Council of any opportunity to shore up the authenticity of the baptism certificate. Well, I think what's important to recognize and what's specifically stated in the record in the pretrial order at page 480 with regard to the stipulation of fact is what was in fact stipulated was that there was a baptism in December 1972 that occurred in the United States. The attempt to bootstrap that stipulation into leading to the authenticity and reliability of a baptismal certificate that's in the record that the actual government put in as part of the N-600, the daughter's citizenship application. Sure, there are some limitations to that, and I think Judge Simon pointed that out, that the factual stipulation itself was to the fact that this baptism occurred in 1972. The problem is the way the district court analyzed it. It first of all said that the certificate was uncertain in both authenticity and evidentiary trustworthiness. So, therefore, it rejected the factual stipulation. And then it says, without the record of baptism, there's no evidence in the record that shows Felix was present in the United States in 1972. And then it went on to say, viewing the documentary evidence, there's no documentary evidence that detracts from the petitioner's valid Mexican birth certificate, absent any credible documentary evidence issued in close proximity to the time of petitioner's birth that might detract from the evidentiary value petitioner's Mexican birth certificate. So what the district court did is it said, okay, I've got on the one hand the government presenting a validly issued Mexican birth certificate. On the other hand, I've got a validly issued California birth certificate that is supported by a baptism that occurred close in time. Well, I'm going to throw out the baptism despite the stipulation. And so, therefore, nothing shores up or corroborates the authenticity or the reliability of the California birth certificate. So, therefore, I'm throwing that out. So it's linked together in the way the court analyzed it. So I want to ask you, first of all, do you concede that the district court made an error in rejecting that factual stipulation? No, I don't think. First off, in answering that specific question, I don't think he did. I don't think he did in rejecting that factual stipulation. What's the case law that says the court can reject a fact stipulation versus a legal stipulation? Well, with regard to this, I don't have a particular case on hand that cites what I know that we cite to him in our brief with regard to stipulations that are subsequently rejected by the courts. And you know those are all distinguishable, right? The McGregor case that you cite was the dead coin dealer and the cross-examiner was opening the door. He said, you open the door, I'm going to reject your stipulation, let in that testimony. Matheson, there was a stipulation to a non-jury trial and then based upon some pretrial evidence ruling, the judge said, well, in light of that I'll let you now ask for a jury trial. And in Cates, basically after a first trial was remanded and the parties had stipulated to a trial on the record, the judge said, well, there's still no evidence of a particular issue on mitigation of damages, so I'll let you have an evidentiary hearing notwithstanding your stipulation to trial on the record. Those are all distinguishable and those are the only cases you cite, correct? And that is correct. My colleague who wrote the brief actually, those are the only cases he cited in this particular respect. But I think what's important to recognize is with regard to what was in fact stipulated here, right, with regard to the actual fact of the baptism, but not the actual baptismal certificate. And I think what Judge Logan does a really good job at with regard to his findings of facts is going forward and distinguishing and saying that this stipulation of fact doesn't have a preclusive legal effect with regard to the baptism and for purposes of the baptismal certificate issued in 2002. Well, no, it didn't make that distinction. That's why I'm not sure what to make of it. Had the district court said what you're trying to argue now, then maybe we can really sort of infer from that that he rejected the certificate itself but accepted the fact of the stipulation. But the court said, nor is the government stipulation to the fact of baptism binding on the findings of the court. It rejected the fact stipulation itself, which then, of course, then throws out the validly issued California birth certificate. So I'm troubled by that. And as I'm sure you know, Arizona has a local rule that says ordinarily courts are bound by factual stipulation. So why doesn't that mistake warrant a remand for the district court to kind of redo its analysis? It may come out the same way. It may not. But it's hard to tell from this record whether he overly relied on that to the petitioner's detriment. Well, I think it's clear from the record itself that the district court judge here does not solely rely on the Mexican registration of birth. And I know that he talks about it being the heart of his decision. But if you look at his particular decision, he indicates that he relied on all pertinent evidence, specifically citing to the N-600 on behalf of Blanca, which is a citizenship application, the CURP, which is the particular nationality card or registry of nationality card issued in 2000 to petitioner, citing specifically with regard to the A file in this particular case. Okay, so that gets to my second area that I'm troubled by the district court's analysis. The petitioner presented an expert, which the court rejected as amounting or tantamount to mere cultural stereotype, citing a case, U.S. v. Bahena-Cardenas. But there, it was the facts were quite different in the sample size. There were, I think, five, six people out of a group of 50-plus people. Here, the sample size is 550,000 people. And I think what's important to recognize and what the district court did, Judge Logan did, and I think what he did an effective job of is really distinguishing with regard to the factual dissimilarities in this particular case with regard to dual citizenship and dual registration of citizenship. What you have here really is a situation in which an individual was born in Mexico, which our position is the individual was born in Mexico, and subsequently was not registered in the United States, and there was no indication that this individual had any presence in the United States for 15-plus years after his birth, and only subsequent to that, subsequent to him being brought to the attention of immigration officials, do you now have this delayed registry of birth? You just said something interesting. You said there's no indication that he was here in the United States for 15 years, and doesn't that tie back to the importance of the factual stipulation that he was, in fact, baptized shortly after his birth in the United States? Well, there is the factual stipulation with regard to the baptism, but what I'm saying as far as indicia of actually registering or registering his birth in the United States for purposes of that dual citizenship application, really what the expert does is come in and talks about how culturally it's very common for these individuals to register for dual citizenship, for schooling, for crossing the border, for getting here and there, back and forth, and we understand that particular position, but here what we had was a situation in which you had for purposes of specifically what's in the record for 18 years, in which this individual does not register or have any indication that his birth was in the United States, which is factually dissimilar from all these examples that this expert, with regard to this 500,000, I think what ties in very clearly to this particular case is that your factual timeline here is you have an individual that was born in Mexico, that birth was registered on the heels of that birth, right? That birth was registered in Mexico on the heels of his birth 39 days later in July of 1972. He was subsequently transported, arguably, to the United States with regard to the baptism, and then for 18 years no volitional acts are conducted on the part of petitioner or petitioner's family with regard to that allegations or arguments with regard to dual citizenship or dual registration that would tie in to this expert's argument. And I think what's important, I know that opposing counsel comes in and says, imagine a case without Special Agent Wakefield. Well, that's clear, because the district court judge did, in fact, that. And he tied these specific facts that the government put forward with regard to the aid filed to the curb, with regard to his encounters with immigration officials in 1987. Counsel, I want to go back to the stipulation for one more time before your time ends, and that is, isn't it inherently unfair for a district judge to reject the party's stipulation of fact after the trial is over and first announce it in an opinion without giving the parties an opportunity to say, I'm rejecting your stipulation of fact. If you want to present evidence, present evidence. Isn't that inherently unfair and maybe even a violation of due process? Your Honor, I think I could speak to that in one sense. Is it, generally speaking, is it inherently unfair with regard to sort of tying petitioner's hands following the decision? However, in looking at the facts of this particular case, I think what's important is to leave, is to distinguish between the factual stipulation and what the district judge, Judge Logan, did in this particular case to differentiate that factual stipulation with regard to his assessment of the California delayed registry of birth, which relied on a 1987 baptism and other documents that was never brought forward by petitioner or petitioner's counsel, as well as the situation with regard to an affidavit signed by two special agents, not special agent Wakefield, with regard to information that was derived from the United States Department of State that specifically indicated that this particular delayed registry of birth was procured fraudulently. So, yes, in a vacuum, does it sound inherently fair to sort of change the rules as you go? Yes, Your Honor, but in this particular case, I think what we need to do is really look to our colleague, Judge Logan, and what Judge Logan did here. Counsel, let me ask you this, because a lot of this stuff has dropped out of my machine. Yes, Your Honor, no problem. And I have great respect for Judge Logan, but when he, in his opinion, and during the proceedings, because I don't have it with me, did he give as one of his explanations for his opinion, not merely that he was rejecting the information, but that he was relying on this absence of anything happening in this 18-year period? Oh, yes. I mean, I think that's really, I think what Judge Logan does a really good job at is really laying out the factual circumstances of this particular case. You have a 1990 delayed registry of birth. 1990 is a critical date, as well, because this individual does not come on the screen of immigration officials until the 1987, 1988. 1988, there's a conviction for methamphetamine. In 1987, there's a conviction for methamphetamine. In 1987, there's an entry without inspection. So all of a sudden, you have all these remedial measures, not in the insurance context, but these remedial measures with regard to what can we do to ensure that I stay in the United States and I am not deported. And I think what he does is he does a very clear factual layout about what transpired. We aren't questioning us taking you over time, but I thank you very much for your argument. Thank you, Your Honors. I appreciate it. Thank you. Your Honors, they had a 20-page multiyear investigation report that didn't question the baptism. They spent three years litigating while my guy was in jail, basically unlawyered, to find out about the baptism. What happened with the baptism was a violation of due process. It was completely unfair. California and the U.S. government, until the day of trial, know a lot more about baptismal records than the record and some of the facts up determining in the district court's opinion. That was patently unfair, and there was no justification for it in the record. Once Agent Wakefield is gone, it's difficult to get around having the dueling birth certificates, and that's why the court's focus on the baptismal records cannot aid the text that you're here reviewing today, Your Honors. That text asks you to decide that because the district court didn't agree with the baptismal records themselves, that it can sort of surmount the fact of the baptism. But California thought the baptism mattered when it issued the delayed registration of birth, which gives you two different registrations of birth, and that's a very significant thing. What do you say to the judge's use of this 15-plus year gap of time? It's almost like we're saying that the minor is stopped later to get a delayed registration of birth because dad didn't do it during that period. I'm puzzled by that argument because if dad lives in Mexico, and you can see America Tapia was born in America, then he would sound like a really bad actor. He was abusive to the wife, abusive to the kids. Sounds like he had to spend more of his time in Mexico. Leonardo testified without contradiction. He was back and forth between the states and Mexico, so I'm puzzled by the idea he was just gone for 18 years. That's not this record. But in any event, the minor, when he's 5, when he's 10, when he's 15, does it tend to make more or less likely that his 14-year-old mother birthed him in Santa Ana in 1972 as to how parents 5, 10, 15 years later deal with lawyers? I think that's completely irrelevant, Your Honor. I don't think it gives rise to any sort of inference, and it certainly can't be laid against the minor in this case. As to the stipulation, which we've been talking about, I would ask the Court respectfully to look at page ER-164 in reviewing this matter. That's the page where, in hastening along the examination of Agent Wakefield, the District Court helpfully interposed, oh, you know, you don't need to worry about that. That's a stipulation. It's in evidence. Exactly. It's exactly our point. It's a stipulation. It's in evidence. The government was right when it stipulated to this fact. California, therefore, was right and proper to rely on it, and they can't get to clear and convincing. Please, in looking at these issues, please keep in mind, Your Honors, they bear the burden straight through this. I don't bear the burden. They bear the clear and convincing burden. We're aware, Counsel. We're taking you over your time. Let's see if my colleagues have any additional questions. Thank you very much. The matter is submitted for decision.
judges: Schroeder, Nguyen, Simon